UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13CV-206-JHM

WILLIAM P. MILLER, *et al.*                                                   PLAINTIFFS

VS.

FIRST FEDERAL SAVINGS BANK OF
ELIZABETHTOWN, INC., *et al.*                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Steven R. Bergs's Motion to Dismiss [DN 16], Motion to Strike Plaintiffs' Amended Complaint [DN 20], Renewed Motion to Dismiss [DN 21] and Motion to Supplement Renewed Motion to Dismiss [DN 52]. Also, the Court will review Defendant Lawrence A. Shapin's Motion to Dismiss [DN 22], Motion to Strike [DN 28], and Defendant First Federal Savings Bank of Elizabethtown, Inc.'s Motion for Judgment on the Pleadings [DN 31]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

This case arises out of the purchase of commercial property in Addison, Illinois ("Addison Property") by Addent, LLC and Forwin, LLC. The individual plaintiffs in this case, including William Miller, Marilyn Kleier, Edin Sehic, Aida Sehic, Shane Shaps, Charles O'Koon, and Mushtaque Juneja ("Individual Plaintiffs"), allege that they bought membership interests in the LLCs after being misled about the value of Addison Property. Addent, LLC and Forwin, LLC were added as plaintiffs in the Amended Complaint and allege identical claims.[1]

---

[1] Following an Order by the Court (Order, DN 53), the Plaintiffs provided corporate documentation demonstrating that Addent, LLC and Forwin, LLC had agreed to join the suit against Defendants. (Amended Reply, DN 55).

According to the Individual Plaintiffs, Defendant Shapin learned of Addison Property, a multi-office dental building owned by Dr. Husam Aldairi, in early 2007. Dr. Aldairi listed the property for sale in a sale-leaseback deal for $3.9 million. In April of 2007, Defendant Shapin started approaching potential investors and allegedly stated that investors could get a 16.1% return on their investment in Addison Property.[2] Additionally, Shapin told Individual Plaintiffs that "the guarantor, Aldairi, was creditworthy and had a net worth of $17 to $21 million." (Compl., DN 1, at 5). Shapin along with Defendant Berg allegedly "promised due diligence to be conducted on behalf of the investors." Id. at 6.

Based on the alleged representations made by Defendants Berg and Shapin concerning Addison Property, Individual Plaintiffs decided to purchase membership interests in the LLCs. Plaintiffs Edin Sehic, Aida Sehic, William Miller, Marilyn Kleier, Shane Shaps, and Charles O'Koon along with Defendant Shapin purchased membership interests in Addent, LLC, which was formed just prior to the purchase of Addison Property. Plaintiff Mushtaque Juneja and Shapin already owned membership interests in the decade-old Forwin, LLC. On September 27, 2007, the parties closed on the sale of Addison Property.

Prior to closing on Addison Property, Shapin acquired financing in the form of $3,315,000 loan from Defendant First Federal Savings Bank of Elizabethtown ("First Federal"). First Federal secured the loan with a mortgage on Addison Property, and also the bank required each member of the two LLCs to personally guarantee the loan. In addition, First Federal obtained an appraisal for Addison Property and determined the value of the property to be at $3.95 million. However, Plaintiffs describe this appraisal as fraudulent because the 2006 tax assessment of Addison Property valued it at less than $1 million.

---

[2] At a later point, Defendant Shapin allegedly represented that the return could get as high as 17.7%.

For the first two years of the lease, Dr. Aldairi made timely rental payments. However, problems with the investment arose in September of 2009 when Dr. Aldairi fell behind on his lease payments for the first time. According to the Plaintiffs, Dr. Aldairi completely stopped making payments on the lease in January of 2011. On June 28, 2011, Dr. Aldairi filed for protection from his creditors under Chapter 7 of the Bankruptcy Code. The LLCs repossessed the property in August and attempted to resell Addison Property, but the best offer they received on the property was only for $1.2 million.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiffs' allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiffs must provide the grounds for their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Additionally, "[t]he standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511–12 (6th Cir. 2001)).

The plaintiffs satisfy this standard only when they "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than

the mere possibility of misconduct." Id. at 678–79. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

## III. DISCUSSION

Plaintiffs, both the individuals and the LLCs, assert multiple claims against Defendants based on representations made by Defendants Berg and Shapin prior to the investment in the LLCs and subsequent dealings with Defendant First Federal in obtaining financing. The central issue to Defendants' motions to dismiss is Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, because it provides the jurisdictional basis in this action pursuant to 28 U.S.C. § 1331. As a result, the Court will examine Defendants' arguments concerning the dismissal of Individual Plaintiffs' and the LLCs' claims under RICO before deciding whether to permit supplemental jurisdiction over Plaintiffs' state-law claims.

### A. Individual Plaintiffs

Although Defendants each filed a separate motion to dismiss (with Defendant First Federal filing a motion on the pleadings), Defendants all argue that Individuals Plaintiffs should be dismissed because they lack a right to sue as individuals under RICO. As to this argument, "[Individual] Plaintiffs do not dispute the general proposition that shareholders may not recover where the *only* damage alleged is diminution in the value of stock or where damages are based *solely* on damage to the corporate entity." (Resp. of Pls. to Mot. to Dismiss Filed by Def., Berg, DN 34, at 2). However, Individual Plaintiffs claim that they suffered a separate injury from that of the LLCs based on representations about the investment made by Defendant Shapin and the individual guarantees made to Defendant First Federal.

As to Individual Plaintiffs' claim against Defendant Shapin, Plaintiffs contend that they suffered a separate harm because "Defendant Shapin approached the individual Plaintiffs as potential investors. He did not pitch his proposal to Addent or Forwin." (Resp. of Pls. to Mot. to

4

Dismiss Filed by Def., Berg, DN 34, at 2). In contrast, Defendants describe Individual Plaintiffs' loss being simply the diminution in the value of their membership interests. To support their argument, Defendants rely on Warren v. Mfrs. Nat'l. Bank of Detroit, 759 F.2d 542, 544 (6th Cir. 1985), which adopted the rule as to individual shareholder suits in antitrust cases and applied it to civil suits under RICO. The rule is as follows:

> An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.

Id. (citations omitted).

Based on Warren, Individual Plaintiffs lack the right to individually recover from Defendants Berg and First Federal. The Sixth Circuit reaffirmed its position in Warren two years after deciding the case. Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 315 (6th Cir. 1987) on reh'g in part, 828 F.2d 1145 (6th Cir. 1987) ("We find that in Warren this Circuit conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of corporate shares."). A recovery by Individual Plaintiffs in this case would simply be the recovery of the value of their membership interests. By preventing Individual Plaintiffs to sue Defendants under RICO, the Court avoids the possibility of double recovery for an injury to the LLCs.[3] This is especially true in this action where Addent, LLC and Forwin, LLC have agreed to join the action. The Individual Plaintiffs seek to overcome the general rule by pointing to the

---

[3] "The reasoning behind this rule is that a diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder." Gaff, 814 F.2d at 315.

5

fact that Defendant Berg made fraudulent representations prior to the purchase of membership interests in Addent, LLC. However, this argument still misses the mark because it fails to address the issue of a distinct injury from that of the LLCs.

The Individual Plaintiffs also assert a theory of specific injury resulting from their signing of personal guarantees with First Federal. They allege both Defendants Shapin and First Federal induced them into signing such agreements. Defendants respond by explaining that Individual Plaintiffs, as guarantors of the loans, simply become creditors of the LLCs, and as such, they have no right to sue for alleged injuries inflicted on the LLCs. Defendants maintain this position based on Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1336 (7th Cir. 1989), which determined that the injury inflicted on a guarantor to be even more remote than one suffered by a shareholder. The Seventh Circuit explained the logic as follows:

> The participants most directly affected by injury inflicted on the firm are the stockholders-for their investment is first to be wiped out. Creditors come next. Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.

Id. Moreover, the fact that Individual Plaintiffs signed personal guarantee with Defendant First Federal does not create a unique injury because "direct *dealing* is not the same as direct *injury*." Id. The alleged injuries by Defendant First Federal arise out of misrepresentations made to the LLCs, not Individual Plaintiffs. This is the only logical result because Individual Plaintiffs signed these personal guarantees to secure the loans made to Addent, LLC and Forwin, LLC.

The Individual Plaintiffs contend that Defendants fail to address the conclusions of Swerdorff v. Miami Nat'l Bank, 584 F.2d 54 (5th Cir. 1978). However, Swerdorff deals only with addressing the definition of "customer" under the Bank Holding Company Act. Id. at 58.

The court clearly explained the holding to be that the stockholders of the "corporation who have been required individually to guarantee the corporation's loan must be considered just as much 'customers' of the bank as the corporation through which they do business for the purposes of these provisions of the Bank Holding Company Act." Id. at 59. Moreover, there is no reason to believe that the court in Swerdorff attempted to expand remedies to plaintiffs that only have a derivative type of action based on an injury to the LLCs.[5]

Finally, Individual Plaintiffs also attempt to paraphrase K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148 (10th Cir. 1985) to suggest that they may maintain a separate injury for misrepresentations made prior to the formation of the LLC. This case deals with fraudulent misrepresentation under Kansas law, not RICO. As such, it has no real application in this case.

The Individual Plaintiffs have failed to establish an injury unique from that of the LLCs. In other words, their injury simply derives from that of the diminution in the value of their membership interests. Therefore, Defendants' motions to dismiss are **GRANTED** as to Individual Plaintiffs' RICO claims.

### B. RICO Claims by Addent, LLC and Forwin, LLC

Addent, LLC, and Forwin, LLC assert RICO claims against all the Defendants in the case. Defendants do not contest that the LLCs are the proper parties to bring a cause of action under RICO, but they argue that the LLCs have failed to alleged sufficient facts in the Complaint to meet the necessary pleading standards.

Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act makes it "unlawful for any person employed by or associated with any enterprise engaged in" activities

---

[5] The Seventh Circuit in Mid-State declined to extend the holding in Swerdorff and explained, "Guarantors must be treated as creditors. When they suffer direct injury-injury independent of the firm's fate-they may pursue their own remedies. Those whose injury is derivative must take their place in line as creditors in the bankruptcy action (or outside of it), dependent now as before on the success of the firm in which they invested." Mid-State, 877 F.2d at 1336-37.

affecting "interstate or foreign commerce . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). In order to prove a violation of this section of the RICO Act, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) (footnote omitted); see also Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006). "To plead a pattern of racketeering activity, the plaintiff must allege at least two predicate acts, although that may not be sufficient." Estate of Wyatt v. WAMU/JP Morgan Chase Bank, 2012 WL 933289 (E.D. Mich. March 20, 2012) (citing Brown v. Cassens Transp. Co., 546 F.3d 347, 354 (6th Cir. 2008)). "Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations." Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir. 1993).

Defendants contend that Plaintiff LLCs have failed to even allege the facts necessary to describe one predicate act necessary to plead a pattern of racketeering. Plaintiffs' Complaint states that "[t]he pattern of racketeering engaged in by Defendants involved fraudulent acts in support of the above scheme constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and financial institution fraud (18 U.S.C. § 1346) . . . ." (Compl., DN 1, at 10). Even after having an opportunity to file an amended complaint, Plaintiffs have declined to describe with more particularity the predicate acts necessary for a RICO claim.[6] Additionally, at least one alleged predicate act, financial institution fraud, is impossible because it only occurs "when someone defrauds the bank, not vice versa." St. Clair v. Citizens Financial Group, 340

---

[6] The Court notes that Plaintiffs attached an affidavit by William Miller and a document listing closing dates on properties by other LLCs to their response to Defendant Berg's motion to dismiss. The affidavit described instances in which Defendants Shapin and Berg contacted Miller about investment opportunities, including the investment in Addent, LLC. Plaintiffs stated in their response that they intended to incorporate those facts into their Amended Complaint. The Plaintiffs failed to do so. Considering that the Plaintiffs were given the opportunity to plead these facts and chose not to do so, the Court will not consider any of those facts in examining the pleadings on a motion to dismiss.

Fed.Appx. 62, 66 (3d Cir. 2009) (citing United States v. Khorozian, 333 F.3d 498, 503 (3d Cir. 2003)). Regardless of this fact, as stated previously, a plaintiff must provide the ground for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In addition to RICO claims, Plaintiff LLCs state that "Defendants and other unnamed co-conspirators knowingly and willfully conspired to violated [*sic*] 18 U.S.C. §§ 1962(a), (b), and (c) . . . ." (Compl. DN 1, at 10). This statement as to a RICO conspiracy claim not only fails to meet the Iqbal pleading standards but also "omit[s] essential allegations detailing an agreement to jointly undertake specific actions illegalized by RICO." Pik-Coal Co. v. Big Rivers Elec. Corp., 200 F.3d 884, 890 n. 10 (6th Cir. 2000) (citing Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 495 (6th Cir. 1990)). As such, Plaintiffs' RICO conspiracy claims fail as a matter of law.

Therefore, the Court finds that, as a matter of law, Defendants' motions to dismiss as to Addent, LLC and Forwin, LLC's RICO claims and RICO conspiracy claims are **GRANTED**.

**C. State Law Claims**

In addition to Individual Plaintiffs' and Plaintiff LLCs' RICO claims, they allege that Defendants violated KRS § 292.320, were negligent, were negligent *per se*, committed civil conspiracy, breached a fiduciary duty, sold unregistered securities in violation of KRS 292.327, and concealed key material facts. The Plaintiffs' Amended Complaint also asks the Court to rescind or void the First Federal business loan agreements. Because Plaintiffs' federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over the state-law claims. See 18 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise

supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Therefore, Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**. 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

Defendant Berg's Motion to Strike Plaintiffs' Amended Complaint [DN 20] and Defendant Shapin's Motion to Strike [DN 28] are **DENIED** for the reasons set forth in the Court's Order [DN 53]. Defendant Steven R. Bergs's Motion to Supplement Renewed Motion to Dismiss [DN 52] is **GRANTED**. Also, Defendant Steven R. Bergs's Motion to Dismiss [DN 16] and Renewed Motion to Dismiss [DN 21], Defendant Lawrence A. Shapin's Motion to Dismiss [DN 22], and Defendant First Federal Savings Bank of Elizabethtown, Inc.'s Motion for Judgment on the Pleadings [DN 31] are **GRANTED**.

cc: counsel of record